UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Tammy Babbitt and William Carter, *individually and on behalf of other similarly situated individuals*, | Civil No. 20-490 (DWF/ECW) |
| Plaintiffs, | MEMORANDUM OPINION AND ORDER |
| v. | |
| Target Corporation, | |
| Defendant. | |

Charles Gershbaum, Esq., and Rebecca Solomon Predovan, Esq., Hepworth, Gershbaum & Roth, PLLC; Christopher Michael Timmel, Esq., and Seth Richard Lesser, Esq., Klafter Lesser LLP; Rachhana T. Srey, Esq., Nichols Kaster PLLP; and Richard E. Hayber, Esq., Hayber, McKenna & Dinsomer, LLC, counsel for Plaintiff.

David A. James, Esq., Joseph G. Schmitt, Esq., and Pablo Orozco, Esq., Nilan Johnson Lewis PA, counsel for Defendant.

## INTRODUCTION

This matter is before the Court on Defendant Target Corporation's ("Target") Motion for Summary Judgment regarding Plaintiff Tammy Babbitt (Doc. No. 92) and Plaintiff Tammy Babbitt's ("Babbitt") Motion for Discovery Pursuant to Federal Rule of Civil Procedure 56(d) ("Rule 56(d)") (Doc. No. 136). For the reasons set forth below, the Court denies Target's motion for summary judgment and denies Babbitt's motion for discovery as moot.

# BACKGROUND

Target is a national discount retailer with approximately 1,900 stores in all 50 states. (Doc. No. 98 ("Brewer Decl.") ¶ 3.) Plaintiffs are Executive Team Leaders ("ETLs") employed at Target who have sued Target under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219. This case involves a single cause of action, wherein Plaintiffs claim that Target improperly classified them as "exempt" under the FLSA as employees who are not entitled to overtime compensation. (Doc. No. 1 ("Compl.") ¶¶ 40-44.)

Target hired Babbitt on March 13, 2018, as an Executive in Training ("EIT") in the North Rochester, Minnesota store. (Doc. No. 95 ("James Decl.") ¶ 6, Ex. E; *id*. ¶ 3, Ex. 2 ("Babbitt Dep.") at 26.) As an EIT, Target paid Babbitt as a non-exempt, hourly employee while she trained and worked alongside an ETL. (James Decl. ¶ 6, Ex. E.) On April 22, 2018, Babbitt became an ETL—Food in the South Rochester, Minnesota store. (Babbitt Dep. at 26.) On June 1, 2019, Babbitt's job title changed to "ETL—Food & Beverage Sales." (James Decl. ¶ 6, Ex. E.) She remained in this position until her termination of employment on February 29, 2020. (*Id*.)

As an ETL, Babbitt was classified as an exempt employee. She was one of eight or nine exempt employees at the South Rochester store who were responsible for roughly 200 employees and who reported to the Store Team Leader ("STL").[1] (Babbitt Dep.

---

[1] ETLs are in charge of managing their particular department. (Doc. No. 98 ("Brewer Decl.") ¶ 6.) The STL and ETLs are the only exempt salaried managerial positions in the store. (*Id*.)

at 30.)  As the ETL in charge of the Food Department (grocery and food service), Babbitt oversaw approximately 75 employees, including five team leads ("Team Lead(s)") who oversaw various subareas in the Food Department and who reported to Babbitt.  (Babbitt Dep. at 38, 78-79, 101; James Decl. ¶ 7, Ex. F.)

Babbitt testified that she worked 60-70 hours a week.  (Babbitt Dep. at 35.) Babbitt's salary started at $70,000.00 and grew to $74,460.00.  (James Decl. ¶ 6, Ex. E.) Babbitt was also eligible for a bonus based on her department's productivity.  (Brewer Decl. ¶ 8.)[2]

Target now moves for summary judgment on Babbitt's FLSA claim.

## DISCUSSION

**I.     Motion for Summary Judgment**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed

---

[2]     During the relevant time period, the median wage for a Team Leader was $19.00/hour or a total income of $32,174.01.  (*See* Brewer Decl. ¶ 9.)

'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Under the FLSA, employers are not required to pay overtime to persons employed "in a bona fide executive . . . capacity[.]" 29 U.S.C. § 213(a). In determining whether an employee is an exempt executive, the Court applies the Department of Labor ("DOL") Regulations ("DOL Regulations"). *See Fife v. Bosley*, 100 F.3d 87, 89 (8th Cir. 1996). The DOL Regulations provide that employees fall within this exemption if: (1) they earn at least $684 per week; (2) their "primary duty" is management of the enterprise or a customarily recognized department thereof; (3) their responsibilities include the customary and regular direction of the work of two or more other employees; and (4) they have the authority to hire and fire other employees or their suggestions or recommendations as to the hiring, firing, advancement, promotion or any other change any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(a).

4

Here, Babbitt does not dispute that she earned more than the threshold salary requirements,[3] that she customarily and regularly supervised the work of two or more employees, or that Babbitt made personnel decisions and recommendations as an ETL so as to satisfy the fourth prong.[4]  Thus, this dispute centers on whether management was Babbitt's primary duty as an ETL.

"Primary duty" is "the principal, main, major, or most important duty that the employee performs."  29 C.F.R. § 541.700(a).  "Management" includes:

> activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.  To determine whether an employee's primary duty is management, the Court looks to the following factors:

> the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the

---

[3]   Babbitt refers to a statutory threshold of $455, but the result is the same using the $684 threshold.

[4]   Babbitt notes that she "could challenge the fourth prong as well here, but the failure to meet the [primary duty] prong is patent." (Doc. No. 132 at 12 n.7.)  Thus, it appears that Babbitt does not contest this prong for purposes of this motion.  For that reason, the Court will not discuss it.

5

> employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a).

The parties dispute how much time Babbitt spent performing exempt managerial tasks, the extent of her managerial responsibilities, and they generally offer very different readings of the evidence as it pertains to the primary duty prong.

Target argues that Babbitt's primary duty was the management of the Food Department. Target points to the fact that Babbitt was the sole ETL responsible for the Food Department at the South Rochester store and that she engaged in many managerial activities. For example, Target points to evidence that Babbitt directed the work of Team Leads (Babbitt Dep. at 38, 78) and was responsible for ensuring that Team Leads were accountable for their subareas (*id*. at 101). In addition, Babbitt was accountable for her department's execution of the weekly sales plan and a staffing plan. (James Decl. ¶¶ 9-10, Exs. H, I; Babbitt Dep. at 167, 173-74). Target submits that the STL expected Babbitt to lead the completion of hourly tasks by delegation. (Babbitt Dep. at 138; James Decl. ¶ 8, Ex. G.) Further, Target points to evidence that Babbitt participated in preparation for executive and regulatory visits (James Decl. ¶ 11, Ex. J; Babbitt Dep. at 141-42), was responsible for overseeing compliance with wage-and-hour requirements (Babbitt Dep. at 47), and frequently opened the store (*id*. at 81-83).

Target also points to Babbitt's performance reviews, which it maintains emphasized Babbitt's management accomplishments. (James Decl ¶¶ 13, 14, Exs. L, M.) Target lists examples of recognition Babbitt received in performance reviews that

6

highlight leadership accomplishments and notes that there is no mention of hourly work performed. (*Id.*) In addition, in Babbitt's 2018 and 2019 reviews, Babbitt performed a self-assessment and credited herself with certain management duties and qualities but did not highlight tasks normally performed by hourly workers. (*Id.*; Babbitt Dep. at 182, 185.) Target also underscores that Babbitt played a role in personnel decisions and recommendations, including hiring, drafting and reviewing performance reviews, and administering coached discipline. (Babbitt Dep. at 66-68, 72, 76-78, 79-80, 89, 93, 165-66.) Finally, Target argues that Babbitt's pay was commensurate with managerial work.

Babbitt argues that Target has failed to meet its burden of showing that management was Babbitt's primary duty at Target. First, Babbitt argues that her most important duty, which took up the majority of her workday, was the performance of non-exempt work. Babbitt testified that she spent 80-90% of her workday performing tasks such as stocking shelves, working the cash register, placing newly received merchandise, setting up displays, cleaning the store, folding clothes, unloading trucks, assisting customers, and filling internet orders. (Babbitt Dep. at 193, 198-203.) Babbitt acknowledges that she did some managerial work but testified that chronic understaffing at the store led to the need for her to perform the work of hourly associates and kept her from spending more time managing. (Babbitt Dep. at 204-05, 208.)

Second, Babbitt argues that evidence regarding the frequency of which she exercised discretionary responsibility and the manner in which she was not free from direct supervision also raises issues of material fact as to whether her duties were

7

primarily managerial. In support, Babbitt points to record evidence showing that she did not possess substantial discretionary responsibility. For example, Babbitt could not establish store policy, practice, or protocols (Babbitt Dep. at 203-04), could not commit Target to matters of financial significance, set employee wages, or determine labor budgets (*id*. at 204-05), did not allocate hours in her department or send associates home to manage the budget (*id*. at 205), could not fire, promote, or independently discipline employees and instead, she did so under close supervision of the Human Resources ("HR") department (*id*. at 66-68, 203, 206). Babbitt claims that when she was allowed to exercise some discretionary managerial responsibility, it was limited to low level and rote tasks, such as making sure staff took breaks, and was often done at the behest and with the guidance of HR. (Babbitt Dep. at 47-48; Babbitt Decl. 10.) For example, while Babbitt participated in interviews for hourly positions, her participation was limited to one of three interviews of prescreened applicants using prescribed questionnaires, and HR made the decisions. (Babbitt Dep. at 61.) Babbitt testified that she was supervised and curtailed as to certain tasks, such as discipline, and that she basically did what HR asked her to do. (*Id*. at 166.) In addition, Babbitt testified that the STL managed every aspect of the store and closely supervised her, sometimes giving instructions over walkie-talkies. (Doc. No. 133-3 ("Babbitt Decl.") ¶¶ 3-4.) For example, the STL would give her a list of things to do and she would pass those tasks along to her team or do them herself. (*Id*.; Babbitt Dep. at 196-98.)

Third, Babbitt argues that the amount of her salary compared to the amount earned by those she supervised is not enough to support Target's burden on summary judgment.

In particular, Babbitt testified that she worked 60-70 hours per week and argues that this would make her effective hourly rate of pay $21.89. (Doc. No. 132 at 39 & n.18.) Because Target states that it paid Team Leads an average of $19 per hour during Babbitt's employment, Babbitt argues that the roughly $3 difference per hour, at a minimum, creates a material issue regarding the primary duty prong so that summary judgment should not be granted.

Target submits that Babbitt relies heavily on her testimony on redirect examination and her supplemental declaration and argues that this should be disregarded as sham evidence contradicted by the cross-examination record. Target takes particular issue with Babbitt's estimate of the percentage of time she spent performing management duties.[5] And with respect to evidence of how Babbitt actually spent her time as an ETL, Target argues that the best evidence is in her performance reviews which does not support a finding that Babbitt's manual tasks were most important. Finally, Target disputes that Babbitt's compensation was not materially different from that of hourly employees.

The Court has carefully considered the parties' arguments regarding the application of the legal standards pertaining to the primary duty prong and concludes that fact issues concerning the nature of Babbitt's duties preclude summary judgment. *See, e.g., Jarrett v. ERC Props., Inc.*, 211 F.3d 1078, 1081 (8th Cir. 2000) (explaining that

---

[5] This evidence is important because "employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement." 29 C.F.R. § 541.700(b).

9

disputes regarding the nature of an employee's duties are questions of fact). The Court acknowledges that there are inconsistencies in Babbitt's testimony, but at this point in the litigation, the Court does not find the inconsistencies compel a ruling in Target's favor as a matter of law. Indeed, Babbitt's explanations of these inconsistencies will be part of what the jury considers and, at the end of the day, the jury may not be persuaded by those explanations. The Court emphasizes that Target bears the burden of proof on the issue of whether Babbitt was an exempt employee. *Fife v. Harmon*, 171 F.3d at 1174. And on summary judgment, the Court views the evidence and reasonable inferences in Babbitt's favor. Using these standards, Target's motion for summary judgment on Babbitt's FLSA claim is properly denied.

II.  **Motion for Discovery**!

Babbitt also argues that the Court should deny Target's motion for summary judgment pursuant to Rule 56(d), under which Babbitt moves separately seeking permission to conduct discovery. Babbitt argues that she should be permitted to conduct additional discovery before Target's summary judgment motion is considered. Babbitt argues that she has good cause to believe that under the agreed upon discovery plan, no dispositive motions would be filed after the completion of the second phase of discovery. Because the Court denies Target's motion for summary judgment, this motion is moot.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment Regarding Tammy Babbitt (Doc. No. [92]) is **DENIED**.

2. Plaintiff Tammy Babbitt's Motion for Discovery Pursuant to Fed. R. Civ. P. 56(d) (Doc. No. [136]) is **DENIED AS MOOT**.

Dated:  February 2, 2022                    s/Donovan W. Frank
                                                                       DONOVAN W. FRANK
                                                                       United States District Judge