# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

|  |  |
|---|---|
| TAMMY BABBITT and WILLIAM CARTER, individually and on behalf of other similarly situated individuals,<br><br>    Plaintiffs,<br><br>v.<br><br>TARGET CORPORATION,<br><br>    Defendant. | Case No. 20-cv-00490-DWF-ECW |

## DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY PRETRIAL SCHEDULING ORDER ON SECOND-PHASE DISCOVERY

4937-7797-1080

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT .................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ....................................................... 2

I.    THE COURT ALREADY HEARD AND DECIDED THE PROPER SCOPE OF SECOND-PHASE DISCOVERY *BASED ON PLAINTIFFS' OWN PROPOSAL* ..................................................................... 2

    A.    After the Parties Presented Extensive Arguments, the Court Gave Guidance About the Proper Scope of Second-Phase Discovery. ........................................................................................... 2

    B.    The Court Then Granted *Plaintiffs'* Proposal Regarding the Scope of Second-Phase Discovery. ...................................................... 6

II.    THE PARTIES RESOLVED MULTIPLE ISSUES DURING SAMPLE DISCOVERY TO STREAMLINE SECOND-PHASE DISCOVERY ................................................................................................ 7

ARGUMENT ..................................................................................................................... 9

I.    PLAINTIFFS DO NOT SHOW GOOD CAUSE TO MODIFY THE DISCOVERY ORDER ................................................................................... 9

    A.    Standard of Review ................................................................................ 9

    B.    Plaintiffs' Recycled Arguments Do Not Establish Good Cause to Modify the Discovery Order. ......................................... 10

    C.    Plaintiffs' Attempts to Minimize Target's Need for Meaningful Second-Phase Discovery Should be Rejected. ............ 11

    D.    Plaintiffs' Burden Arguments Are Not New. ................................ 15

    E.    Plaintiffs' Baseless Attacks Against Target's Motives Are Neither New Nor Meritorious. ....................................................... 16

II.    PLAINTIFFS SHOULD BE JUDICIALLY ESTOPPED FROM SEEKING A CHANGE TO THE DISCOVERY ORDER ........................ 18

CONCLUSION .................................................................................................. 19

i

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minnesota*,
   187 F.R.D. 578 (D. Minn. 1999)................................................................................ 10

*Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*,
   2010 WL 4193076 (D. Minn. Oct. 7, 2010) ............................................................... 9

*Carlson v. C.H. Robinson Worldwide, Inc.*,
   2006 WL 2830015 (D. Minn. Sept. 26, 2006) ........................................................... 13

*Ellingsworth v. Vermeer Mfg. Co.*,
   949 F.3d 1097 (8th Cir. 2020) ............................................................................... 9, 10

*Gustafson v. Bi-State Dev. Agency of Missouri-Illinois Metro. Dist.*,
   29 F.4th 406 (8th Cir. 2022) .................................................................................... 18

*Holaway v. Stratasys, Inc.*,
   2013 WL 5787476 (D. Minn. Oct. 28, 2013) ........................................................... 13

*Kelley v. BMO Harris Bank N.A.*,
   2022 WL 1771999 (D. Minn. June 1, 2022)................................................................ 9

*Muff v. Wells Fargo Bank, N.A.*,
   2022 WL 413933 (N.D. Iowa Feb. 10, 2022)............................................................ 17

*New Hampshire v. Maine*,
   532 U.S. 742 (2001)................................................................................................. 18

*Niazi Licensing Corp. v. Bos. Sci. Corp.*,
   2019 WL 6827588 (D. Minn. Dec. 13, 2019).............................................................. 9

*Olukayode v. UnitedHealth Grp.*,
   2021 WL 3293648 (D. Minn. Aug. 2, 2021) ............................................................. 13

*Sherman v. Winco Fireworks, Inc.*,
   532 F.3d 709 (8th Cir. 2008) ..................................................................................... 9

**Other Authorities**

Fed. R. Civ. P. 16(b)(4) ...................................................................................... 9, 10

Local Rule 7.1(g)......................................................................................................... 9

4937-7797-1080

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' motion (Dkt. 479, "Mot.") to modify the pretrial scheduling order on second-phase discovery is nothing more than an attempt to relitigate—and substantially narrow—the very discovery framework *plaintiffs* proposed and the Court adopted after extensive briefing and argument. Having secured a staged-discovery process by representing to the Court that a sample phase would streamline, not replace, the fulsome merits discovery to which Target is entitled, plaintiffs now reverse course. Plaintiffs ask the Court to reduce the scope of discovery it granted to Target by *more than 80%.* That change in position is irreconcilable with their prior representations to the Court and Target's right to develop its defenses in this uniquely broad collective action and should not be allowed.

Plaintiffs identify no change in law, no new facts, and no shift in circumstances justifying revisiting the Court's order setting discovery limits. Instead, they simply repeat the same burden arguments the Court already has heard and rejected—and which plaintiffs abandoned when they urged the Court to adopt the very limits on discovery they now deride as "absurd." Their attempt to repackage old arguments, coupled with unfounded accusations regarding Target's motives, falls far short of establishing the good cause needed to modify a scheduling order.

Because plaintiffs improperly seek to undo settled discovery rulings and constrain Target's ability to fairly defend itself, their motion should be denied.

4937-7797-1080

## FACTUAL AND PROCEDURAL BACKGROUND

I.    **THE COURT ALREADY HEARD AND DECIDED THE PROPER SCOPE OF SECOND-PHASE DISCOVERY *BASED ON PLAINTIFFS' OWN PROPOSAL***

    A.    **After the Parties Presented Extensive Arguments, the Court Gave Guidance About the Proper Scope of Second-Phase Discovery.**

In this exempt misclassification case brought under the Fair Labor Standards Act (the "FLSA"), the Court, on March 28, 2022, granted conditional certification of a collective of ETLs who worked for Target "in the United States at any time on or after July 23, 2018." Dkts. 155, 158. In doing so, the Court applied a lenient standard and required only a "colorable basis" that ETLs were classified exempt based on a single policy or plan. Dkt. 158 at 10-13. The Court explained that the burden is minimal at the conditional certification stage because Target is entitled to engage in "fulsome discovery" during the merits phase to make its decertification arguments. Dkt. 158 at 11-13, 23.

Notice of the nationwide collective was then sent to all covered current or former ETLs. More than 3,400 opt-ins joined the case.

On December 1, 2023, the parties informed the Court that they had met and conferred multiple times regarding the process and scope of post-conditional certification discovery, but they "remained divided in their fundamental approaches." Dkt. 348. The Court set a hearing to address the parties' proposals, requiring the parties to outline their positions in advance of the hearing. Dkt. 349.

Plaintiffs' pre-hearing letter advocated for a "staged approach" to merits discovery, first focusing on a sample of 30 opt-ins that "would be followed by a second stage with a

2

larger group of opt-ins, to be defined by agreement of the parties or by Court order." Dkt. 352 at 1-2. Plaintiffs made clear that the sample stage would be a tool to streamline the fulsome discovery to which Target is entitled. *Id.* Plaintiffs specifically represented that the sample stage would "facilitate the efficient ironing-out of the inevitable disputes that *always* arise" in merits discovery, such as what documents the parties must produce. *Id.* at 1-2. They also argued that a sample stage would help the parties identify "core facts and issues." *Id.* at 2. In response to Target's proposal (outlined below), plaintiffs made many of the same arguments raised in their current motion: the scope of Target's proposed one-stage discovery would be "patently inefficient [and] overly burdensome," and "Target's proposal is intended to harass and impose substantial costs on plaintiffs' counsel and delay this case." *Id.* at 3-4. Accordingly, plaintiffs asked for *either* "a staged approach" to merits discovery "*or*, at a minimum, [to] limit the scope of Target's second stage representative discovery." *Id.* at 4 (emphasis supplied).

Target's pre-hearing letter advocated for no sample discovery phase and sought three types of fact discovery: (1) individual questionnaires to 50% of opt-ins, (2) written discovery from 10% of opt-ins, and (3) depositions of 3% of opt-ins. Dkt. 351 at 1-2. Target explained that this scope was necessary in light of the exceedingly broad scope of the collective and appropriately balanced the importance of Target's constitutional right to defend itself with the burden on the parties to engage in discovery. *Id.* at 3-4, n. 3 (noting that "this conditionally certified collective spans 15 unique ETL positions, at over 1,400 Target stores across all 50 states, reporting to at least 1,500 different supervisors" and citing cases granting discovery of similar proportions to what Target sought).

3

In response to plaintiffs' proposal, Target presciently argued that, if the Court granted plaintiffs' request for sample discovery, then plaintiffs would not, in fact, view the sample stage as a tool to assist in further merits discovery. Dkt. 351 at 4. Instead, Target anticipated that plaintiffs would use the sample stage "to argue later that representative discovery should be limited to this small group of opt-ins, because they are sufficiently representative of the entire collective." *Id.*

At the hearing, the Court recognized that Target was entitled to fulsome discovery that was commensurate with the uniquely broad scope of the collective:

> MR. SCHMITT: … [W]e tied our proposals to the size of the collective because it's our view and we believe supported by the case law that the size of the collective should impact upon the scope of the discovery that is done. … [Our proposal] is crafted that way in conformance with the case law because we think that's necessary to allow Target to be able to develop its defenses.
>
> THE COURT: And I understand the need to fulsomely do that.

Declaration of Joseph Schmitt ("Schmitt Decl."), Ex. A (transcript of December 13, 2023, hearing) at 19:22-20:6. The Court further understood Target's concern that plaintiffs would later wield sample discovery as a cudgel to limit second-phase discovery:

> THE COURT: … [I]t sounds like Target's concern is really if you said, okay, we'll start with 30 that you were going to be stuck with 30.
>
> MR. SCHMITT: That's right, Your Honor. I mean, to be transparent, there is—there can be some inertia that builds behind, you know, we've done 30. Really are you going to get additional information? Really is this necessary? And we don't want to be in a position in which we're stuck having to advocate for why we need more than 30 three months from now. We want to make sure that we're going to have the fulsome opportunity to develop the defenses that we need for this very important case.
>
> THE COURT: Okay. I understand that.

4

4937-7797-1080

*Id.* at 21:19-22:7.

For their part, plaintiffs confirmed that the proposed sample stage was intended "just to really flesh out the issues" to make the second merits stage more efficient. Schmitt Decl., Ex. A at 26:4-26:12. Plaintiffs did not take a position regarding the appropriate scope of their proposed second-phase discovery at the hearing. *Id.* at 30:4-25; 31:11-32:3. So long as the Court granted sample discovery, plaintiffs generally were amenable to the scope of discovery that Target had proposed. *See* Dkt. 352 at 4 (asking the Court either to grant staged approach to merits discovery *or* to limit Target's proposal).

In addition to the scope of written discovery, the Court heard arguments about whether depositions should be set at a 4-hour limit or 6-hour limit. Schmitt Decl., Ex. A at 38:6-25, 41:20-42:21.

At the end of the hearing, the Court stated it was inclined to grant plaintiffs' request for a staged discovery approach so the parties could resolve disputes before the fulsome discovery phase. Schmitt Decl., Ex. A at 45:16-46:2. The Court said it also fully appreciated that, if it followed plaintiffs' proposal, then it would need to determine the scope of second-phase discovery *before* the parties began sample stage discovery; otherwise, "Target will be arguing entirely uphill to get any additional discovery." *Id.* at 46:12-47:12. The Court was not inclined to permit Target's requested questionnaires, but it was "considering something around 10 to 15 percent" of the collective for the second stage of merits discovery because "the Court has certified a nationwide collective that encompasses … all 50 states. And so my job is to balance the need to make sure the discovery is representative for purposes of all the parties in the case." *Id.*

5

4937-7797-1080

After providing this guidance, the Court instructed the parties to meet and confer to determine if they could reach agreement on the final percentage of the collective that would ultimately be subject to discovery. Schmitt Decl., Ex. A at 48:20-49:9.

**B.    The Court Then Granted *Plaintiffs'* Proposal Regarding the Scope of Second-Phase Discovery.**

On January 5, 2024, the parties submitted their final proposals regarding the process and scope of post-conditional certification discovery. Dkt. 361. *Plaintiffs* proposed that, after a sample discovery phase, written discovery should cover 10% of the collective, while Target proposed that it should cover 15% of the collective.

> →    **Plaintiffs' Position**: Target may serve written discovery upon 10% of the collective.
>
> →    **Target's Position**: Target may serve written discovery upon 15% of the collective.

*Id.* at 4. With respect to depositions, *both parties agreed* that Target should be entitled to depose 3% of the collective. *Id.* at 5.

> Target may select a group of opt-ins, no more than 3% of the collective to appear for depositions:

*Id.* The parties disagreed only over how to select the deponents. *Id.*

On January 29, 2024, the Court entered the Pretrial Scheduling Order (Post-Conditional Certification Discovery) now at issue (the "Discovery Order"). Dkt. 363. In the Discovery Order, the Court adopted the staged approach to discovery for which plaintiffs advocated. With respect to second-phase discovery, the Court granted *plaintiffs'* request regarding the appropriate limits: it allowed Target to serve written discovery on

6

10% of the collective and depose 3% of the collective. *Id.* at 4-5. The Court also made clear that "[a]ll depositions authorized by this Order will be subject to a six (6)-hour time limitation." *Id.* at 4.

## II.    THE PARTIES RESOLVED MULTIPLE ISSUES DURING SAMPLE DISCOVERY TO STREAMLINE SECOND-PHASE DISCOVERY

As plaintiffs acknowledge (Mot. at 2, 9), sample discovery has streamlined the issues for second-phase discovery. The following is an illustrative (but not exhaustive) list of the issues resolved during sample discovery and the approximate time it took to resolve these issues. The parties will not need to replicate the effort required to resolve these issues during second-phase discovery.

- The parties developed a list of key search terms for Target to apply to the ESI of opt-ins and their up-the-chain managers. It took *eight months* to reach agreement on these terms. Schmitt Decl., ¶ 3.[1]

- The parties resolved the scope of documents and information Target could obtain from opt-ins. It took nine months from the time Target sent its first deficiency letter until the time the Court ordered the opt-ins to supplement their productions and interrogatory answers. Schmitt Decl., ¶ 5.

---

[1] There is no reason the parties cannot expeditiously agree to key terms for second-phase discovery, having spent significant time negotiating these terms during the sample phase. In multiple meet-and-confers, plaintiffs have indicated that they intend to "supplement" the key terms agreed upon with additional terms. Target has asked repeatedly for plaintiffs' additional key terms so as not to replicate the delays that occurred during sample phase discovery. But, as was the case with sample discovery, Target's requests have thus far gone unanswered. Schmitt Decl. ¶ 4.

- It took nearly nine months to start identifying opt-ins for deposition due to delays in some written discovery responses and the need to replace opt-ins. Schmitt Decl., ¶ 6. Target will be able to quickly identify deponents after it receives responses to the first round of written discovery in second-phase discovery.

- The parties developed streamlined dismissal protocols for non-responsive opt-ins, which provided that opt-ins shall receive a two-week extension for discovery responses before Target may move for their dismissal based on non-responsiveness. Schmitt Decl., ¶ 7. Target will argue that this same procedure should apply in second-phase discovery, as some opt-ins were not deemed to be "non-responsive" by their counsel until more than 100 days after their original deadline to respond to written discovery, which prevented the parties from moving to the next opt-in to get the necessary 30 for the sample phase. *Id.*, ¶ 8.

- The parties negotiated ESI protocols and litigated the issue of whether Target is required to produce all hyperlinked documents and associate them to the emails in which they were embedded. Schmitt Decl., ¶ 9.

Again, the efforts needed to resolve the above disputes will not need to be replicated, which will make second-phase discovery proceed more efficiently.

4937-7797-1080

## ARGUMENT

### I.    PLAINTIFFS DO NOT SHOW GOOD CAUSE TO MODIFY THE DISCOVERY ORDER

#### A.    Standard of Review

"A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).[2] The Eighth Circuit (and plaintiffs' own cited cases) make clear that good cause for amending a scheduling order requires showing "a change in the law, newly discovered facts or another significant change in circumstance." *Kelley v. BMO Harris Bank N.A.*, 2022 WL 1771999, at \*6 (D. Minn. June 1, 2022) (citing *Ellingsworth v. Vermeer Mfg. Co.*, 949 F.3d 1097, 1100 (8th Cir. 2020)). If there has been no such change, and the party seeking amendment to a scheduling order could have (or did) make all the same arguments earlier in the litigation, then they have failed to establish "good cause" for amendment under Rule 16(b)(4). *See Ellingsworth*, 949 F.3d at 1100 (affirming denial of plaintiff's motion to amend scheduling order because it "had more to do with a change in litigation strategy than in the factual or legal basis of [plaintiff's] case"); *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 718 (8th Cir. 2008) (reversing district court's order granting leave to amend scheduling order because there was "no change in the law, no newly discovered facts, or any other changed circumstance"); *Aviva Sports,*

---

[2] Plaintiffs' motion is really one for reconsideration, because they are not merely seeking to modify deadlines in a schedule, but to change the substantive scope and limits of discovery the Court ordered after giving the parties a full and fair opportunity to present their arguments. Just as there is not good cause to modify any schedule in this case, there are no "compelling circumstances" here as required by the Court's Local Rule 7.1(g) that would warrant reconsidering the Discovery Order. *See also Niazi Licensing Corp. v. Bos. Sci. Corp.*, 2019 WL 6827588, at \*1 (D. Minn. Dec. 13, 2019) (outlining the "limited function" of motions to reconsider).

*Inc. v. Fingerhut Direct Mktg., Inc.*, 2010 WL 4193076, at \*6 (D. Minn. Oct. 7, 2010) ("[A] party does not meet the good cause standard under Rule 16(b) if the relevant information on which it based the amended claim was available to it earlier in the litigation.").

**B.    Plaintiffs' Recycled Arguments Do Not Establish Good Cause to Modify the Discovery Order.**

Tellingly, plaintiffs never articulate what constitutes "good cause" to modify the Discovery Order. They only vaguely observe that a movant's "diligence" is relevant to the good cause standard for modification of a schedule. Mot. at 6.[3]

Plaintiffs certainly cannot meet their burden to show good cause merely by recycling arguments that they presented (or could have presented) to the Court before it issued the Discovery Order. Plaintiffs do not identify any change in the law, newly discovered facts or another significant change in circumstance that could warrant reconsideration of the Discovery Order. *Kelley*, 2022 WL 1771999, at \*6; *Ellingsworth*, 949 F.3d at 1100. Instead, plaintiffs argue that the Court should reconsider the Discovery Order because (1) the sample discovery phase "covered the same common issues and points," and there is no need for so much second-phase discovery (Mot. at 2, 9-11); (2) second-phase discovery will take a lot of effort to complete, and plaintiffs believe this effort will not "make any material difference to the fact-finding purpose," (Mot. at 11-16); and

---

[3] Plaintiffs also (incorrectly) state that Target will not be prejudiced by granting their motion. Mot. at 8. But the "good cause" analysis under Rule 16(b)(4) does not "turn on the existence or absence of prejudice to the non-moving party." *Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minnesota*, 187 F.R.D. 578, 582 (D. Minn. 1999). Even so, it is difficult to imagine a scenario in which denying a party 80% of discovery previously ordered by the Court would not result in prejudice to that party's ability to present its claims or defenses.

10

4937-7797-1080

(3) opt-ins will decide to not pursue their claims if they must participate in discovery (Mot. at 17-19). These arguments are neither persuasive nor new, as plaintiffs made these same arguments years ago before the Court entered the Discovery Order. Dkt. 352 at 2 n.2 (arguing that after "30 or 40" depositions, testimony becomes "mind-numbingly repetitive"); *id.* at 3 (arguing that Target "wants attrition by discovery"). But even if they were, plaintiffs should be judicially estopped from asserting them having successfully misled the Court just two years ago. *See* section Background I.B, *infra.*

### C. Plaintiffs' Attempts to Minimize Target's Need for Meaningful Second-Phase Discovery Should be Rejected.

Sample discovery is no substitute for second-phase discovery. As a threshold matter, before the Court adopted a staged approach to merits discovery, plaintiffs represented to the Court that sample discovery would be merely a tool to facilitate second-phase discovery. Dkt. 352 at 1-2 (sample phase would resolve "inevitable disputes" and help identify "core facts and issues"). Still, the Court appreciated Target's concern that, notwithstanding their representations about the purpose of sample discovery, plaintiffs later might wield sample discovery as a cudgel to limit the scope of second-phase discovery. Accordingly, the Court deliberately set forth the scope of second-phase discovery at the outset of merits discovery. Schmitt Decl., Ex. A at 46:12-47:12. Regrettably, plaintiffs have reneged on their representations to the Court and Target. Mot. at 9-11.

Even taking them at face value, none of plaintiffs' arguments regarding the sample discovery process qualify as a change in the law, newly discovered facts or another

11

significant change in circumstance. Among other things, plaintiffs argue that, during sample discovery, "the Parties came to understand what each considered to be relevant and complete responses" to discovery requests, "written discovery requests served onto opt-in plaintiffs were identical," and Target "follow[ed] materially the same deposition script." Mot. at 9-11. But the purpose of sample discovery was to resolve disputes surrounding discovery deficiencies and identify "core facts and issues" to streamline the discovery process. Dkt. 351 at 1-2. The fact that Target ultimately tailored its discovery requests to specific questions and covers common topics in depositions only reflects that the sample discovery served its purpose—to focus the parties on the "core facts and issues" relevant to this case. It would be ironic and unfair to now use the learnings of the sample phase of discovery as a basis not to do second phase discovery. Besides, from an evidentiary perspective, the alleged uniformity of Target's discovery requests and deposition questions is irrelevant—what matters are *plaintiffs' responses*.

The Court should also reject plaintiffs' argument (Mot. at 11-16) that the supposed diminishing returns from additional opt-in depositions and discovery responses moot Target's right to collect potential evidence in support of its defenses. There has been no change in law, new facts, or changed circumstance supporting that argument. Indeed, plaintiffs have failed to argue, much less show, that the thirtieth opt-in's responses or the tenth opt-in's deposition testimony during sample phase discovery were somehow less meaningful than the first opt-in's. At most, plaintiffs vaguely assert that the opt-ins'

12

responses "fall within common and repeated categories,"[4] but plaintiffs even admit the opt-ins' responses "could be (arguably) differentiated."  Mot. at 10. Such "differentiated" evidence is exactly what will support decertification, which is why Target requires the discovery contemplated in the Discovery Order. *See, e.g.*, *Olukayode v. UnitedHealth Grp.*, 2021 WL 3293648, at \*7–8 (D. Minn. Aug. 2, 2021) (decertifying FLSA collective due, in part, to disparate factual and employment settings and individualized defenses); *Holaway v. Stratasys, Inc.*, 2013 WL 5787476, at \*2 (D. Minn. Oct. 28, 2013) (decertifying FLSA collective, noting that inquiry is "fact-intensive" and focused on "(1) the extent and consequence of disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations" (citation omitted)); *Carlson v. C.H. Robinson Worldwide, Inc.*, 2006 WL 2830015, at \*11 (D. Minn. Sept. 26, 2006) (decertifying collective on ground that "The Court cannot fairly and efficiently administer collective actions that require individualized inquiry into the exempt status of several hundred individuals").

Indeed, this is an unusually large conditionally certified collective action with over 3,400 opt-ins working in 15 unique ETL positions at over 1,400 stores in all 50 states. Target requires a meaningful opportunity to take discovery across a reasonable cross-section of the enormous collective to explore the many permutations of ETLs' roles that

---

[4] Plaintiffs do not actually compare the deposition transcripts or discovery responses to establish uniformity in answers beyond lazily submitting them all as exhibits and telling "the Court to give them a good read[.]" Mot. at 10.

13

4937-7797-1080

would warrant decertification and to prepare its defenses on the merits. As Target argued in December 2023 (and the Court and plaintiffs later agreed), the 10% written discovery and 3% deposition limits will allow Target to do that. The discovery approved by the Court also falls well within the range of what is necessary and appropriate in a collective action of this size. *See* Dkt. 351 at 2-3 (citing *Lindsay v. Clear Wireless LLC*, 2015 WL 13021686 (D. Minn. Apr. 3, 2015), *Burch v. Qwest Commc'ns Int'l, Inc.*, 677 F. Supp. 2d 1101, 1113 (D. Minn. 2009), *Nerland v. Caribou Coffee Co.*, 564 F. Supp. 2d 1010, 1016 (D. Minn. 2007), *Jackson v. U.S. Bancorp*, 2021 WL 2190884, at *4 (D. Kan. May 31, 2021), *Flood v. Carlson Rests. Inc.*, 2016 WL 3221146, at *6 (S.D.N.Y. June 7, 2016), *Bonds v. GMS Mine Repair & Maint., Inc.*, 2014 WL 6682475, at *2, *4 (W.D. Pa. Nov. 25, 2014), *Smith v. Family Video Movie Club, Inc.*, 2012 WL 4464887, at *3 (N.D. Ill. Sept. 27, 2012), and *Craig v. Rite Aid Corp.*, 2011 WL 9686065, at *3–4 (M.D. Pa. Feb. 7, 2011)).

*Goodman v. Burlington Coat Factory Warehouse Corp.*, a case relied on extensively by plaintiffs, is not to the contrary. There, the court authorized 35 opt-in depositions of the *572* total opt-ins (*i.e.*, more than 6%). 292 F.R.D. 230, 233 (D.N.J. 2013). Put differently, the collective was approximately *1/6th* of the size of this one, so *Goodman* is not a valid reference point. Even if it were, the more than 6% the court allowed the defendant to depose in *Goodman* is more than *twice* as much as this Court allowed two years ago. The court also authorized the defendant to serve discovery requests on 60 opt-ins, or for "approximately 10% of the class," *id.* at 234, *exactly* what plaintiffs claim amounts to an "absurdity" here.

14

4937-7797-1080

In essence, plaintiffs want to short-circuit Target's right to collect compelling evidence showing the lack of uniformity among opt-ins' work experiences at Target, as well as the fact that they perform their duties as exempt employees. The Court already rejected that effort when it entered the Discovery Order and should reject it again now.

### D.    Plaintiffs' Burden Arguments Are Not New.

Plaintiffs also opine that the probative value of 346 written discovery responses and approximately 100 depositions is not worth the effort to complete them. (Mot. at 11-16.) But before the Court entered the Discovery Order, plaintiffs essentially made the same argument. *See* Dkt. 352 at 3-4; Schmitt Decl. Ex. A at 30:4-25, 31:11-32:3. In response, Target explained why discovery of up to 10% of the collective was entirely appropriate in this case given the exceedingly broad scope of the collective. Dkt. 351 at 3-4 (citing cases); Schmitt Decl., Ex. A at 19:22-20:6. The Court expressed its agreement with Target's position on this point. *Id.*, 19:22-20:6, 46:12-47:12. After receiving this guidance from the Court, plaintiffs *abandoned* their argument that discovery of up to 10% of the collective would be disproportionate to the needs of the case under Rule 26(b), and instead specifically proposed limiting second-phase discovery to 10% of the collective. Dkt. 361 at 4-5. Having chosen to abandon their burden argument, they cannot reprise it now.

Plaintiffs point to *nothing* new or changed about *this* case that should compel this Court to reconsider the Discovery Order. Indeed, plaintiffs make much of the fact that the current discovery order requires "having 346 more individuals answer written discovery, and the taking of 100 opt-in depositions." Mot. at 11. But at the time plaintiffs submitted their final proposal regarding merits discovery to the Court, they knew the collective

15

consisted of more than 3,400 opt-ins, *see* Dkt. 361, and therefore knew what volume of discovery responses would result. Nothing has changed.

Moreover, in light of the oft-touted sophistication of their counsel,[5] plaintiffs cannot genuinely feign surprise at the scope of discovery. Indeed, plaintiffs' arguments about "what will come next" in this case is based almost exclusively on their counsel's experience litigating *other* cases. *See, e.g.*, Mot. at 12 (stating that "final certification or decertification of managerial misclassification claims largely follow the same form" in plaintiffs' counsel's experience); *id.* at 13-15 (reciting plaintiffs' counsel's experience and lessons learned in litigating a 2014 case); *id.* at 16 (in plaintiffs' counsel's experience, the appropriate number of depositions lies somewhere between 30 and 100). Plaintiffs' assertions regarding the scope of discovery in other cases are wholly anecdotal and conclusory. But even if they were empirical and supported factually, plaintiffs' counsel never explain why they could not have invoked this experience and made these comparisons when the parties were litigating the appropriate scope of merits discovery in the first instance. Again, nothing is new here that would qualify as good cause to modify the Discovery Order.

### E.    Plaintiffs' Baseless Attacks Against Target's Motives Are Neither New Nor Meritorious.

Finally, plaintiffs contend that "Target's undoubted real desire" is "that the present scope [of discovery] will cull the size of the collective when individuals are non-

---

[5] *See* Schmitt Decl., Ex. A at 33:7-12 ("We've probably done as many of these cases as any lawyers in America, these mid-manager retail sale big box cases.").

16

4937-7797-1080

responsive." Mot. at 17-18. But plaintiffs previously made this very claim (Dkt. 351 at 3), and it was implicitly rejected by the Court when it entered the Discovery Order.

Besides being recycled, plaintiffs' contention is false. After all, *plaintiffs themselves* proposed the current discovery scope that they are now trying to limit. Dkt. 361 at 4-5. Moreover, while some level of attrition is unavoidable, the fact that some "opt-ins *have chosen* not to proceed" with their claims (Mot. at 5, emphasis supplied) does not justify further limiting Target's ability to collect evidence.[6]

In short, plaintiffs' motion consists of nothing more than arguments that the Court already heard and considered before it entered the Discovery Order. Plaintiffs have therefore failed to show good cause to modify the order and their motion should be denied.[7]

---

[6] Plaintiffs irresponsibly accuse Target of "trying [to] coerce out those who have joined the case, to create hardship and inconvenience, and in cases of subpoenas sent to current and former employers, to intimidate, and to cause anxiety and stress." Mot. at 4. Plaintiffs submit no such evidence and mischaracterize the normal discovery process as something else. Target respectfully requests that the Court caution plaintiffs' counsel that such baseless attacks are not appropriate. *See, e.g.*, *Muff v. Wells Fargo Bank, N.A.*, 2022 WL 413933, at *1, n. 1 (N.D. Iowa Feb. 10, 2022) ("Plaintiff's counsel is cautioned against making ethical aspersions at opposing counsel unless they are very well founded. Here, they are not.").

[7] Plaintiff's proposal to proceed through second-phase discovery in a piecemeal fashion (Mot. at 19) would be unnecessarily inefficient, particularly when this Court has already decided the appropriate scope of discovery. Again, this Court has already expressly recognized the need to determine the full scope of the second stage before the sample stage was commenced because, otherwise, "Target will be arguing entirely uphill to get any additional discovery." Schmitt Decl., Ex. A at 46:12-47:12. The Court has no reason to reconsider the Discovery Order. As Target already explained to plaintiffs, Target is amenable to working with them to organize a staggered production of discovery responses. *See* Mot. at 20. But Target will not agree to reduce the amount of discovery to which it is entitled to under the Discovery Order.

17

## II.    PLAINTIFFS SHOULD BE JUDICIALLY ESTOPPED FROM SEEKING A CHANGE TO THE DISCOVERY ORDER.

Plaintiffs' motion also should be denied on equitable grounds. "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749, (2001) (alteration and internal quotation marks omitted).  The doctrine of judicial estoppel has three factors:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* at 750-51 (internal quotation marks and citations omitted).

All three judicial estoppel factors are met here. Plaintiffs' current position is diametrically opposed to their earlier second-phase discovery proposal, which they convinced the Court to adopt. They now seek to leverage the work done in sample discovery to supplant the bulk of second-phase discovery and "derive an unfair advantage or impose an unfair detriment on" Target's merits and decertification defenses (notwithstanding their earlier representations to the Court about the scope and purpose of sample discovery). This Court should not allow that. *See Gustafson v. Bi-State Dev. Agency of Missouri-Illinois Metro. Dist.*, 29 F.4th 406, 411 (8th Cir. 2022) (affirming application

18

4937-7797-1080

of judicial estoppel because plaintiff successfully persuaded district court he was not pursuing private right of action and then later asserted one at summary judgment, which "would present an entirely different trial for [defendant] to defend").

## CONCLUSION

For these reasons, the Court should deny plaintiffs' motion to modify the scope of discovery permitted under the Discovery Order.

Dated: January 22, 2026                         NILAN JOHNSON LEWIS PA

By: *s/ Joseph G. Schmitt*
    Joseph G. Schmitt
    Christopher A. Amundsen
    Courtney L. Burks
    NILAN JOHNSON LEWIS PA
    250 Marquette Avenue South, Suite 800
    Minneapolis, Minnesota  55401
    Telephone: (612) 305-7500
    Fax: (612) 305-7501
    jschmitt@nilanjohnson.com
    camundsen@nilanjohnson.com
    cburks@nilanjohnson.com

    and

19

4937-7797-1080

Jeffrey D. Wohl (admitted pro hac vice)
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California 94111
Telephone:  (415) 856-7000
Facsimile:  (415) 856-7100
jeffwohl@paulhastings.com

Sara B. Tomezsko (admitted pro hac vice)
Daniel Richards (admitted pro hac vice)
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
saratomezsko@paulhastings.com
danrichards@paulhastings.com

ATTORNEYS FOR DEFENDANT
TARGET CORPORATION

20

4937-7797-1080